FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ FEB 2 1 2006 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **No. 05-CR-425 (JBW)** |
|  | ) |  |
| **v.** | ) | AMENDED |
|  | ) | MEMORANDUM AND ORDER |
| **DOMINICK PIZZONIA,** | ) | ON DISQUALIFICATION MOTION |
|  | ) |  |
| **Defendant.** | ) |  |
|  | ) |  |

---

Appearances:

For the United States:
        United States Attorneys Office
        Eastern District of New York
        One Pierrepont Plaza
        Brooklyn, New York 11201
        By:    Winston Y. Chan
              Mitra Hormozi
              Joseph Lipton
              Deborah Sue Mayer

For Defendant:
        Rubinstein & Corozzo LLP
        260 Madison Avenue
        New York, New York 10016
        By:    Joseph R. Corozzo, Jr.

For Defense Counsel:
        Law Offices of Gerald L. Shargel
        570 Lexington Avenue, 16th Floor
        New York, New York 10022
        By:    Henry Mazurek

1



# Table of Contents

I.      Facts..........................................................................................................................3

II.     Sixth Amendment......................................................................................................6

III.    Defense Counsel's Prior Representation of Government Witness.......................................9

        A.      Law..................................................................................................................9

        B.      Application of Law to Facts................................................................................12

                1.      Michael DiLeonardo................................................................................12

                2.      Primo Cassarino....................................................................................14

IV.     Defense Counsel's Current and Prior Representation of Unindicted Co-Conspirator.......15

        A.      Law................................................................................................................15

        B.      Application of Law to Facts................................................................................17

V.      Defense Counsel's Alleged Role as Co-Conspirator........................................................18

        A.      Law................................................................................................................18

        B.      Application of Law to Facts................................................................................19

VI.     Criminal Investigation of Defense Counsel....................................................................20

        A.      Law................................................................................................................20

        B.      Application of Law to Facts................................................................................22

VII.    Defense Counsel's Natural and Alleged Criminal Family Loyalties................................22

        A.      Law................................................................................................................22

        B.      Application of Law to Facts................................................................................24

VIII.   Conclusion..............................................................................................................25

JACK B. WEINSTEIN, Senior District Judge:

Dominick Pizzonia is accused of participating in a racketeering conspiracy involving the Gambino organized crime family. Three murders, extortion and loan-sharking are charged as predicate acts. Citing multiple conflicts of interest, the government has moved for the disqualification of his attorney, Joseph R. Corozzo, Jr. ("defense counsel"). After an evidentiary hearing, the motion is denied. *See United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982) (hearing on motion to disqualify).

## I.    Facts

The government has alleged eight conflicts of interest between defendant and defense counsel: 1) defense counsel's prior representation of government witness Michael DiLeonardo; 2) defense counsel's prior representation of a co-defendant of government witness Primo Cassarino; 3) defense counsel's current representation of Ronald Trucchio, one of defendant's unindicted co-conspirators in what are referred to as "the Uva murders"; 4) defense counsel's prior representation of John Setaro, an unindicted co-conspirator in both the Uva murders and one of the loan-sharking acts; 5) two ongoing investigations of defense counsel by the United States Attorney; 6) defense counsel's position as associate of the Gambino crime family and unindicted co-conspirator; 7) defense counsel's loyalties to his father and uncle, both high-ranking members of the Gambino family; and 8) defense counsel's position as "house counsel" to the Gambino family. Based on somewhat similar allegations, defense counsel was recently disqualified in another case involving the Gambino family. *See U.S. v. Yannotti*, 358 F. Supp. 2d 289 (S.D.N.Y. 2004).

At the *Curcio* hearing the government presented the testimony of Michael DiLeonardo, a former officer of the Gambino crime family and a key cooperating witness in the instant case who claimed to have retained defense counsel in a prior prosecution. To avoid a possible conflict between defense counsel and his alleged former client, the court ordered that an independent attorney conduct cross-examination of the witness. DiLeonardo testified about his legal and social relationship with defense counsel and defense counsel's continuing relationship with members of the Gambino crime family, including John Gotti, Jr. His testimony was credible and uncontradicted.

The government also submitted two audio-video recordings of defense counsel consulting with John Gotti, Sr.—the late head of the Gambino family—on fairly intimate terms at the United States Medical Center for Prisoners in Springfield, Missouri. The recordings are the subject of another memorandum and order. *See* Amended Mem. & Order on Release of Video Recordings of February 14, 2006.

Defense counsel is an able attorney with considerable experience defending persons accused of participating in organized crime. *See* Gov't Mem. 18-19 (identifying 32 alleged organized crime members and associates represented by defense counsel in the Southern and Eastern Districts of New York). He denies any link to crime warranting disqualification. Defendant has known him from childhood and has great confidence in his skill and devotion. Defendant's natural family strongly concurs.

The evidence submitted by the parties supports the following findings of fact:

1.     John Gotti, Jr. assisted defense counsel financially when defense counsel was

4

attending law school.

2.     After defense counsel was admitted to practice in New York, John Gotti, Jr. made fairly "regular" payments to him for legal advice and representation on criminal matters.

3.     Defense counsel's father and uncle were, and are, members and officers of the Gambino crime family.

4.     During a trip to Foxwoods Casino in Connecticut in 1994, defense counsel and members of the Gambino crime family dined together; some "business matters," presumably related to gambling, were discussed.

5.     While DiLeonardo—a key government witness in the instant case—was being prosecuted on federal extortion charges in Atlanta, Georgia, he was represented by attorneys at trial, but not by present defense counsel. In March or April of 2001, he asked defense counsel to interview Craig DePalma, a Gambino family member, to determine if DePalma would testify against DiLeonardo. DePalma's name appeared on a government witness list for the Atlanta trial. DiLeonardo tendered a check for one thousand dollars for legal fees to defense counsel. Defense counsel never cashed the check and was not acting as an attorney when making the inquiry about DePalma's intentions. He never acted as DiLeonardo's attorney. He did report back to DiLeonardo that DePalma presented no danger in the Atlanta trial.

6.     Funds to retain defense counsel in this prosecution were supplied only by defendant and his family.

## II.     Sixth Amendment

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to an attorney includes both the right to counsel of one's own choosing, *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 1697 (1988), and the right to an attorney unimpaired by conflicts of interest. *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003). When a defendant seeks to be represented by an attorney with divided loyalties, these rights collide. If they do, "the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government." *Id.*

The presumption in favor of a defendant's choice of counsel may be rebutted by a showing of either actual conflict or serious potential for conflict. *Wheat*, 486 U.S. at 164, 108 S. Ct. at 1700; *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (citing *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993)). Once a court is apprised of the possibility of a problem, it must determine whether the defendant can waive the right to a conflict-free attorney. *Perez*, 325 F.3d at 125 (*citing United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994); *Jones*, 381 F.3d at 119.

A serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person." Restatement (Third) of the Law Governing Lawyers § 121 (2000) ("Restatement").

A conflict is either potential or actual. A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." *Jones* at 119

(emphasis and citation omitted). An actual conflict arises when the attorney's and the defendant's interests "diverge with respect to a material factual or legal issue or a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *Jones*, 381 F.3d at 119 (internal quotation marks and citations omitted). If counsel suffers from only a potential conflict or an insignificant actual conflict, defendant may waive the right to conflict-free counsel. *Perez* at 125; *Levy*, 25 F.3d at 153.

If a conflict is waivable, a *Curcio* hearing is conducted to determine whether defendant's waiver is knowing and intelligent. *Perez* at 127; *Levy*, 25 F.3d at 153. *See also* Restatement § 122(1) ("Informed consent [to waive a conflict] requires that the client or former client have reasonably adequate information about the material risks of such representation . . . ."). Such a hearing was conducted in the present case with defense counsel represented by an independent attorney.

If the attorney suffers from an actual conflict so severe that it impedes effective assistance, counsel should be disqualified notwithstanding defendant's desire to waive. *Perez* at 125; *Jones*, 381 F.3d at 119. *See also* Restatement § 122(2) ("Notwithstanding the informed consent of each affected client or former client, a lawyer may not represent a client if: (a) the representation is prohibited by law; (b) one client will assert a claim against the other in the same litigation; or (c) in the circumstances, it is not reasonably likely that the lawyer will be able to provide adequate representation to one or more of the clients."). The category of cases presenting unwaivable conflicts is "very narrow." *Perez* at 126 (noting that unwaivable conflicts have typically involved situations where the defense is "permeated" by counsel's interest in not being implicated in defendant's crime or in securing a large retainer by an adverse party).

7

Multiple conflicts of interest are considered together rather than in isolation. *Levy* at 157 ("Even if we could overlook any one ground of conflict, the myriad connections between [counsel, defendant and co-defendant] oblige us to consider [counsel's] conflicts together."); *Yannotti*, 358 F. Supp. 2d at 291-92.

The court retains discretion to reject a waiver in order to protect the integrity of the judicial proceedings and the public's interest in ensuring a just verdict. *Perez* at 125; *Locascio*, 6 F.3d at 931. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S. Ct. at 1698. Trial judges must apply their independent judgment to ensure that attorneys appearing before them follow the relevant codes of professional conduct. *See id.* (applying the ABA Model Code of Professional Responsibility and ABA Model Rules of Professional Conduct). This rule supports a "legitimate wish" that the court's "judgments remain intact on appeal." *Wheat*, 486 U.S. at 161, 108 S. Ct. at 1698.

Nevertheless, district courts have "substantial latitude" in refusing or accepting waivers. "[T]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict" in the pre-trial context. 486 U.S. at 162-3, 108 S. Ct. at 1699.

### III.    Defense Counsel's Prior Representation of Government Witness

#### A.    Law

An attorney's former representation of a government witness on a substantially related matter can create the potential for serious conflict of interest warranting disqualification since the

8

attorney may be limited in impeaching a former client or attacking his credibility on summation

without becoming an unsworn witness. *See Ciak v. United States*, 59 F.3d 296, 304-05 (2d Cir.

1995), abrogated on other grounds by *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237 (2002);

*United States v. Iorizzo*, 786 F.2d 52, 57 (2d Cir. 1986). Absent a waiver from the former client,

the attorney may not inquire into privileged matters; this restriction may impair his ability to

cross-examine the witness fully. *See United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995);

*Ciak*, 59 F.3d at 305; *United States v. James*, 708 F.2d 40, 45-46 (2d Cir. 1983). *Cf. United*

*States v. Lussier*, 71 F.3d 456, 462 (2d Cir. 1995) (attorney's conflict was significantly

diminished and waivable where the attorney was free to cross-examine a former client who had

waived the attorney-client privilege).

A matter is substantially related to an earlier matter if:

> (1) the current matter involves the work the lawyer performed for
> the former client; or
>
> (2) there is a substantial risk that representation of the present
> client will involve the use of information acquired in the course of
> representing the former client, unless that information has become
> generally known.

Restatement § 132. This prohibition is not monolithic. A client who is represented by an

attorney on one matter may not inhibit that attorney's freedom in all future, unrelated matters.

"The scope of a client's interests is normally determined by the scope of work that the lawyer

undertook in the former representation." Restatement § 132 cmt. e.

An attorney is barred from making an argument or cross-examining a former client in a

way that could affect the client adversely in a present proceeding. *United States v. Rahman*, 861

F. Supp. 266, 277 (S.D.N.Y. 1994) (disqualifying firm that had previously represented four co-

defendants who might possibly testify). Under the "common interest" rule, the duty of confidentiality also extends to a co-defendant of a former client where counsel for both undertook a joint defense. *See United States v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989).

A serious conflict warranting disqualification may arise if the attorney is "potentially in a position to use privileged information obtained during prior representation" of the former client. *United States v. Cunningham*, 672 F.2d 1064, 1072 (2d Cir. 1982). *See also Belmontes v. Brown*, 414 F.3d 1094, 1118 (9th Cir. 2005) ("Conflicts of interest based on successive representation may arise if the current and former cases are substantially related, if the attorney reveals privileged communications of the former client, or if the attorney otherwise divides his loyalties."). Cross-examination of a former client will not always lead to disqualification on this ground. Not every brief relationship between an attorney and a layman involves the exchange of confidential communications. *See* Restatement § 132 cmt. h ("The specific tasks in which a lawyer was engaged might make the access to confidential client information insignificant. The lawyer bears the burden of persuasion as to that issue and as to the absence of opportunity to acquire confidential information. When such a burden has been met, the lawyer is not precluded from proceeding adversely to the former client.").

The majority of cases that have found a conflict of interest arising from prior representation of a witness involve substantially related representations, where the danger of divided loyalties or revealing client confidences is at a maximum. *See Malpiedi*, 62 F.3d at 467 (counsel represented government witness during the grand jury proceedings in the same case); *Ciak,* 59 F.3d at 304 (in criminal prosecution, counsel sought to impeach a key government

10

witness who was former client in forfeiture case stemming from same prosecution); *James*, 708 F.2d at 43 (counsel's former representation of alleged head of narcotics organization was substantially related to representation of defendants where the defense's theory of entrapment was likely to elicit facts about defendants' relationship with the former client); *United States v. Moscony*, 927 F.2d 742, 747 (3d Cir. 1991) (counsel represented three government witnesses during the grand jury investigation in the same case); *Falzone*, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (counsel's former eleven-year-long representation of government witness was substantially related to representation of defendant where it was possible that the witness acquired the information about defendants' loan-sharking enterprise during his own criminal activity). *But see United States, ex rel. Stewart, on Behalf of Tineo v. Kelly*, 870 F.2d 854, 857 (2d Cir. 1989) (trial court had discretion to reject defendant's waiver when defense counsel had previously represented key government witness in unrelated matter); *Falzone* at 1275 (expressing doubt that substantial relationship is required).

Limited representation of a government witness unrelated to representation of the defendant is not likely to present a disabling conflict. *See United States v. Paone*, 782 F.2d 386, 393 (2d Cir. 1986) (holding that defendant was not denied effective assistance of counsel because the district court refused to disqualify his counsel who, ten years prior to trial, aided a government witness in applying for bail on unrelated charges).

The burden of establishing that an attorney-client relationship existed between the attorney and the former client is on the party seeking disqualification. *Falzone*, 766 F.Supp. at 1272 (citing *Schwimmer*, 892 F.2d at 244). An attorney-client relationship arises when:

> (1) a person manifests to a lawyer the person's intent that the

lawyer provide legal services for the person; and either

> (a) the lawyer manifests to the person consent to do so; or

> (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relied on the lawyer to provide the services . . . .

Restatement § 14. Since "only the client and the attorney know what confidential communications occurred," the view of the former client is an important factor in deciding whether disqualification is necessary. *James*, 708 F.2d at 46. *See also Malpiedi*, 62 F.3d at 467-68 (counsel prohibited by lower court from cross-examining a government witness who believed counsel was her lawyer during grand jury proceeding, even if counsel believed he was never her lawyer).

Absent institutional interests in the integrity of judicial proceedings, and subject to the attorney-client privilege of the former client, a defendant may waive an attorney's conflict arising from prior representation of a trial witness. *Perez*, 325 F.3d at 127; *Lussier*, 71 F.3d at 462.

## B. Application of Law to Facts

### 1. Michael DiLeonardo

For the purposes of defendant's trial, government witness DiLeonardo has not waived any attorney-client privilege arising from his communications with defense counsel.

Defense counsel acted as an investigator for DiLeonardo, but not as his attorney, by interviewing a potential witness in DiLeonardo's Atlanta extortion prosecution. Defense counsel's work for DiLeonardo was brief, unpaid and done out of past friendship. He

interviewed only one potential witness on DiLeonardo's behalf and reported back that the witness would not testify adversely to DiLeonardo.

The present prosecution concerns loan-sharking and murders in the Eastern District of New York. It is not related to defense counsel's interview of DePalma in DiLeonardo's Atlanta extortion trial. Defense counsel's cross-examination of DiLeonardo will have no adverse effect upon the witness, who is already cooperating with the government. Defendant's and DiLeonardo's interests are not legally adverse to each other. DiLeonardo did not believe that defense counsel was his attorney. At the hearing, DiLeonardo testified: "I didn't have any legal proceedings with [defense counsel] that way [i.e., appearing in court or filing motions]. His job for me was being a courier of messages." T. of Feb. 6, 2006 Hearing at 25:14-15 ("T.").

While pertinent at the disqualification hearing, DiLeonardo's testimony about counsel's alleged involvement with the Gambino crime family would not be relevant at trial. No harm is likely to inure to defendant from it.

DiLeonardo's testimony about the murders charged to defendant here *would* be relevant and injurious to defendant. To effectively represent defendant, counsel would have to attack his former friend on cross-examination. Counsel need not have recourse to attorney-client confidences to conduct effective cross-examination of DiLeonardo. The material for effective cross-examination is well-known. DiLeonardo's extensive criminal history and motives for acting as a cooperating witness were explored at the hearing and are matters of public record. If counsel does not use confidential communications between himself and DiLeonardo on cross-examination—and it is highly unlikely that he would need to—no ethical standard will be breached. Mere friendship of the superficial kind between defense counsel and DiLeonardo is

not a basis for disqualification. *Cf. infra*, VII. Counsel's cross-examination of DiLeonardo will not interfere with the trial or make it appear unfair.

### 2. *Primo Cassarino*

The government plans to elicit the testimony at trial of Primo Cassarino, a cooperating witness and former co-defendant of Richard V. Gotti, a past client of defense counsel. If Gotti and Cassarino undertook a joint defense, and defense counsel was privy to confidential communications, defense counsel would be limited in his cross-examination of Cassarino under the "common interest" rule. *See Schwimmer*, 892 F.2d at 243-44.

The government's unsupported allegations that, prior to trial in the earlier case, Cassarino, Gotti, defense counsel and others "participated in joint defense meetings, during which [defense counsel] undoubtedly received confidential communications by Cassarino," Gov't Letter of Nov. 16, 2005 at 1, are insufficient to support a finding of conflict. The government has not indicated how any of the alleged communications would affect defense counsel's ability to cross-examine Cassarino. The threat allegedly made by a member of the Gambino family at one of the meetings—that any defendant taking a plea would be killed—while disturbing, is not tied by the government to defense counsel. It is irrelevant to defense counsel's ability to adequately represent his client in the present prosecution.

## IV. Defense Counsel's Current and Prior Representation of an Unindicted Co-Conspirator

### A. Law

14

Simultaneous representation of a defendant and an unindicted co-conspirator may constitute a conflict of interest if, had there been a joint trial, counsel would have been forced to take contradictory positions in defending both. *See United States v. Friedman*, 854 F.2d 535, 574 (2d Cir. 1988) (no conflict arose from counsel's simultaneous representation of defendant on racketeering charges and an unindicted co-conspirator in view of latter's "marginal relevance to [the] case, let alone to [defendant's] guilt"); *United States v. Stantini*, 85 F.3d 9, 15-19 (2d Cir. 1996) (habeas petitioner convicted of conspiracy and substantive murder charges not denied effective assistance of counsel when his attorney simultaneously represented an unindicted co-conspirator in a related racketeering prosecution in which the same murder was charged as a predicate act).

Simultaneous representation of an unindicted co-conspirator does not necessarily create an "inherent conflict" limiting a defendant's ability to enter plea negotiations. Defense counsel could insist that the defendant's agreement with the government provide that the government could not use the plea as evidence in the trial of his other client. *Stantini* at 17. Emphasizing the role of a co-conspirator or placing him at the scene of the murder may not benefit a defendant. Rather, it may validate the account of the government's witnesses. *Id. But see United States v. Christakis*, 238 F.3d 1164, 1169 (9th Cir. 2001) (counsel's interest in protecting another client from being implicated in a conspiracy conflicted with defendant's interest in exchanging information inculpating the co-conspirator to obtain a reduced sentence); *United States v. Allen*, 831 F.2d 1487, 1496-97 (9th Cir. 1987) (counsel labored under actual conflict of interest where defendant's interest in showing that he was not a principal in a drug conspiracy would have implicated unindicted bosses of the operation who had ongoing attorney-client relationship with

15

counsel and bankrolled the defense for defendant and his sixteen co-defendants). Multiple representation conflicts have generally been held to be waivable. *Perez*, 325 F.3d at 127; *Fulton*, 5 F.3d at 613.

Since the duties of loyalty and confidentiality remain in force after the attorney-client relationship has ended, *Yannotti*, 358 F. Supp. 2d at 295, prior representation of an unindicted co-conspirator raises concerns similar to simultaneous representation of an unindicted co-conspirator. If the link between the successive representations or the risk of divulging former client's confidences is sufficiently attenuated, a conflict does not necessarily arise "simply because an attorney previously represented a possible co-conspirator or a potential witness." *Frazier v. Kelly*, 112 F. Supp. 2d 253, 258 (W.D.N.Y. 1999) (counsel had no actual or potential conflict where member of counsel's law firm had previously represented an unindicted co-conspirator who was not expected to testify). *See also Millio v. Barkley*, 48 F. Supp. 2d 259, 267-68 (W.D.N.Y. 1999) (counsel who represented defendant at a *Wade* hearing did not have a conflict of interest due to counsel's prior representation of a co-conspirator in unrelated court appearance where co-conspirator was not expected to testify).

A partner in a law firm is vicariously bound by the duties of loyalty and confidentiality that his partners owe to their clients. *See* Restatement § 123(1) (conflicts of one lawyer are imputed to other lawyers who "are associated with that lawyer in rendering legal services to others through a law partnership, professional corporation, sole proprietorship, or similar association"). Due to the vicarious obligations of partners, "a showing that two attorneys are partners or represent themselves to the world at large as partners, and whose interests overlap in the acceptance of clients and in the sharing of fees is sufficient to ground a conflict of interest

16

claim, assuming that there is proof that the clients' interests may have been in conflict." *United States v. Jiang*, 140 F.3d 124, 127 (2d Cir. 1998) (internal quotation marks and citation omitted). *See also United States v. Blount*, 291 F.3d 201, 211 (2d Cir. 2002) ("A conflict-of-interest claim may . . . be grounded in the fact that two lawyers from the same firm represent two codefendants, even in unrelated proceedings.").

### B.    Application of Law to Facts

Defense counsel and his firm have represented, and currently represent, Ronald Trucchio and John Setaro on matters unrelated to defendant's prosecution. Both men are allegedly unindicted coconspirators in the murders of which defendant is accused. Trucchio and Setaro themselves are not expected to testify. The government has indicated that it will introduce testimony by two cooperating witnesses, Frank Lino and Sal Romano, that will implicate defendant and these two men in the charged murders. The government contends that counsel cannot adequately represent defendant—by pursuing a plea bargain and cooperation agreement, vigorously cross-examining the government witnesses, or shifting the blame to the purported co-conspirators—without violating his continuing duty of loyalty to these other clients.

Defendant does possibly reduce the number of defense strategies by continuing to retain defense counsel. The court so apprised him. Nevertheless, he insists on asserting his Sixth Amendment right to counsel of his own choosing. *See Perez*, 325 F.3d at 127 (permitting waiver even where defendant may have to "abandon a particular defense or line of questioning").

### V.    Defense Counsel's Alleged Role as a Co-Conspirator

17

## A.     Law

Allegations that counsel has engaged in criminal activity related to the charges for which the client is on trial create an unwaivable conflict of interest. *See United States v. Williams*, 372 F.3d 96, 105 (2d Cir. 2004) (finding unwaivable conflict of interest where counsel unlawfully exchanged firearms with defendant indicted for using firearms in furtherance of his criminal activities); *Fulton*, 5 F.3d at 609-10 (habeas petitioner convicted on heroin charges was denied effective assistance of counsel where a government witness alleged that counsel received part of the heroin linked to defendant, and was involved in heroin trafficking). If the allegations are true, an attorney cannot freely advise the client whether to cooperate, or whether to take the stand at trial, for fear that the client could reveal information implicating the attorney. *Fulton* at 610. If the allegations are false, the attorney cannot examine the government witness regarding the allegations against the attorney without in effect becoming an unsworn witness. *Id.*

Whether a conflict arising from allegations that defense counsel is generally involved in crime is waivable depends on the connection between the attorney's alleged criminal activity and the charges on which defendant is tried. *See Fulton* at 611. An unwaivable conflict does not arise "any time a court learns that an attorney may have committed a crime; the attorney's alleged criminal activity must be sufficiently related to the charged crimes to create a real possibility that the attorney's vigorous defense of his client will be compromised." *Id. See also United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir. 1984) (defendant could not waive a conflict where, unbeknownst to him, his counsel allegedly engaged in criminal activities similar to the charges against defendant with a possible co-conspirator of defendant). It is unclear whether a

defendant's knowledge of the attorney's criminal conduct permits waiver of a "related-crime" conflict. *Williams*, 372 F.3d at 105.

If defense counsel is allegedly involved in crimes that are not substantially related to the charges against the defendant, waiver is permitted. *See Fulton*, 5 F.3d at 611; *United States v. Ramos*, 350 F. Supp. 2d 413, 421-22 (S.D.N.Y. 2004) (defendant could waive conflict stemming from counsel's investigation and indictment for accepting payments from a client appointed under the Criminal Justice Act and lying to the court about the payments); *United States v. Gambino,* 838 F. Supp. 749, 755 (S.D.N.Y. 1993) (counsel's alleged involvement in tax evasion and obstruction of justice was not sufficiently related to defendant's racketeering charges to constitute a violation of the right to counsel). *Cf. Levy*, 25 F.3d at 156-57, 158-59 (petitioner was denied effective assistance of counsel where the attorney was prosecuted on unrelated criminal charges and was alleged to have a role in the flight of co-defendant because petitioner did not have an opportunity to make a knowing waiver).

### B. Application of Law to Facts

The government alleges that defense counsel and defendant are both participants in the same racketeering enterprise, namely, the Gambino crime family. In support of this allegation, the government offers transcripts of two taped conversations among Gambino family members and defense counsel's extensive representation of persons alleged to be participants in organized crime.

The taped conversations relate to defense counsel's father's desire to have defense counsel inducted into the Gambino family. It is undisputed that defense counsel's father and

19

uncle are members of the family; this is not a ground for disqualification. *See infra,* VII. The transcripts do not support the government's argument. To the contrary, they reveal that the Gambino members are bemused at the father's request. "I can't get over it. I really can't. . . . The guy's a legitimate [expletive] lawyer. . . . If your son is a professional guy, a lawyer, you want to make [i.e., induct] him?" Gov't Mem. 15. Many a father has attempted to drag his son into the family business against the son's will.

That defense counsel has represented well over a score of clients accused of participating in organized crime cannot serve as a basis for a finding that he himself is a member of organized crime. The courts do not impute to criminal defense lawyers—even those who have developed a specialized clientele—the alleged crimes of their clients.

There is no reason that any testimony about defense counsel's alleged criminal associations would be relevant at defendant's trial.

## VI.    Criminal Investigation of Defense Counsel

### A.    Law

Investigation of counsel's possible involvement in crime includes, but is not exhausted by, the concerns that arise when a defendant's attorney is allegedly involved in the crimes of his client. *See supra,* V. When counsel is the target of a criminal investigation by the same office that is prosecuting his client, he "may, consciously or otherwise, seek the goodwill of the office for his own benefit" and his attempt to do so "may not always be in the best interest of [his] client." *Armienti v. United States,* 234 F.3d 820, 825 (2d Cir. 2000). Therefore, a conflict may be present even without a nexus between the attorney's alleged conduct and the charges against

his client. *See Levy*, 25 F.3d at 156 (attorney's prosecution on unrelated charges by the same office presented a conflict of interest because the attorney "may have believed he had an interest in tempering his defense of [the defendant] in order to curry favor with the prosecution"); *United States v. Ramos*, 350 F. Supp. 2d at 420 (noting that the Court of Appeals for the Second Circuit "has never wavered from considering the lawyer's position as a target of criminal investigation while representing a criminal defendant a situation of conflict of loyalties analogous to representation of multiple clients").

If the activity for which the attorney is investigated is substantially related to the charges against the defendant, disqualification is necessary, notwithstanding defendant's waiver. *See supra,* V. *See also Jones*, 381 F.3d at 120 (upholding a district court decision to disqualify an attorney for defendant charged in narcotics trafficking conspiracy based on a possible grand jury investigation that the attorney passed information from defendant to another client suspected of distributing narcotics).

In the absence of a strong connection between the activity for which counsel is investigated and defendant's charges, defendant may generally waive a conflict stemming from a criminal investigation of his attorney. *See, e.g., Levy*, 25 F.3d at 157 n.8 (permitting waiver where the attorney was under investigation for unrelated crimes and allegedly had a role in co-defendant's flight); *United States v. Aiello,* 900 F.2d 528, 531-32 (2d Cir. 1990) (permitting waiver where the attorney was investigated in a different district for unrelated conduct); *Ramos*, 350 F. Supp. 2d at 422 (a defendant can make a knowing waiver of conflict arising from counsel's investigation and indictment on unrelated charges); *Gambino*, 838 F. Supp. at 754-55 (same).

## B.    Application of Law to Facts

The government has notified defense counsel that he is the subject of two criminal

investigations. One relates to defense counsel's alleged obstruction of justice and witness

tampering in another criminal prosecution in this district. The other concerns the alleged use of

attorneys to pass messages for the Gambino crime family. Defense counsel denies any

misconduct and contends that the investigations, one of which has been pending since 1996, are

wholly manufactured.

Neither of the investigations bears a strong connection to the charges at issue in this

trial—murder, loan-sharking and extortion. It is not critical that both this prosecution and the

investigations involve the same organized crime family. *See Levy*, 25 F.3d at 157 n.8 (waiver

permitted where allegations against attorney concerned "completely different substantive crime

and [were] factually and temporally distinct from [defendant's] alleged criminal acts," even

though attorney was alleged to have helped co-defendant flee justice). Defendant has chosen to

waive these conflicts.


## VII.    Defense Counsel's Natural and Alleged Criminal Family Loyalties

### A.    Law

An attorney's loyalties to third parties, including his natural family members, may create

a potential conflict of interest if the interests of those other individuals are adverse to those of his

client. Such a conflict is waivable. See Restatement § 125 ("Unless the affected client consents .

. . a lawyer may not represent a client if there is a substantial risk that the lawyer's representation

of the client would be materially and adversely affected by the lawyer's financial or other

22

personal interests.").

In *Yannotti*, the court held that present defense counsel's loyalties to his uncle and father, alleged high-ranking members of the Gambino family, gave rise to an actual conflict of interest between counsel and his client. *Yannotti*, 358 F. Supp. 2d at 292. Crucial to the court's holding was the government's representation that multiple witnesses would testify at trial that defendant acted under the direct supervision of defense counsel's uncle during the time relevant to the indictment. *Id.* The court's holding rested on two grounds. First, the government's repeated references during the course of trial to counsel's uncle could "simultaneously discredit [counsel] and reinforce in the jurors' minds the notion that [defendant] himself is a bad actor." *Id.* Second, while the prospect of life imprisonment gave defendant an incentive to cooperate with the government, counsel would not be likely to advise him to cooperate or take the stand for fear that he might provide information damaging to defense counsel's uncle or father. *Id.* The court observed that, considered alone, this conflict could have been waived. *Id.* In combination with defense counsel's alleged involvement in a shooting that would be the subject of testimony at trial and his prior representation of a "material" witness, it required disqualification. *See id.* at 295 (describing the witness' testimony as "direct and important").

In racketeering prosecutions, a conflict of interest arises if counsel acts as "house counsel" for an organized crime family for two reasons: first, the attorney's loyalties may be divided between the client and the payor. *See* Restatement § 134(1) ("A lawyer may not represent a client if someone other than the client will wholly or partly compensate the lawyer for the representation, unless the client consents . . . and knows of the circumstances and conditions of the payment."). Second, the government may use evidence that the attorney acts as "house

23

counsel" to establish the existence of a criminal enterprise. Evidence tending to incriminate the attorney would prejudice the defendant. *See Locascio*, 6 F.3d at 932-33.

Evidence that counsel receives benefactor payments for the representation of others, including defendant, establishes that counsel acts as a "house counsel." *See id.* In *Locascio,* the court found that a telephone conversation in which the defendant complained to his attorney about incurring legal fees for the representation of others, and the testimony of another witness that he did not pay for that attorney's legal services presumably because defendant had paid for them, sufficiently established that counsel acted as house counsel to the Gambino crime family. *Id.* at 933. Testimony merely describing counsel as "house counsel" does not sufficiently show that counsel's loyalties are split between the defendant and the payor, in the absence of evidence that the attorney is paid to represent defendant or that defendant is compelled to retain the particular attorney. *See Yannotti*, 358 F. Supp. 2d at 297 (refusing to rely on "house counsel" allegation in disqualifying counsel and noting that the government did not proffer evidence that counsel was paid by John Gotti, Jr. to represent defendant or others, nor that defendant was compelled to retain counsel).

### B.    Application of Law to Facts

The facts show a disturbing pattern of a continuing relationship with the Gambino family and commitment to the welfare of criminal family's members. There is no indication, however, that defense counsel is being paid by third parties other than defendant's wife and children for his representation, nor is there any reason to believe that members of organized crime are attempting to limit a good faith and aggressive defense.

24

It would be inappropriate to burden an attorney's career with the background of his relatives. The court takes judicial notice—having tried many of these crime family cases and being aware of ethnic considerations in the area of Brooklyn where counsel was brought up—that in some natural families, some members become lawyers and effective law enforcement personnel, and others become members of the mob. We do not punish a man on account of his relatives. Family status ceased to determine permissible occupation in this country in 1776.

The fact that a criminal helped pay for the education of a bright young man does not require the conclusion that that young man will follow the dictates of his former sponsor. Alexander Hamilton's sponsors in the Caribbean exercised no control over his subsequent history. *Compare* Richard Brookhiser, Alexander Hamilton, American 19-20 (Hamilton's education funded by merchant who traded in slaves) *with id.* at 175-6 (Hamilton co-founded Society for Manumission of Slaves, which successfully pushed to make slavery illegal in New York).

## VIII.  Conclusion

The alleged potential conflicts are serious. The court has warned defendant on numerous occasions of the risks of continuing with defense counsel. It has offered him an independent appointed attorney to advise him on the matter. Since defendant is reportedly illiterate, the court ordered that a person be provided at government expense to read defense counsel's and the government's motion papers to him. *See* Order of November 14, 2005. Thereafter, the court heard testimony from defendant, his wife and their children, each of whom made clear a desire to proceed with present defense counsel. Defendant has repeatedly stated on the record that he has

25

known defense counsel since the latter was a child, and trusts him. Defendant's wife and son testified that *they* approached defense counsel about representing defendant; he was not imposed by a third party. Should defendant be convicted, any future collateral attack claiming ineffective assistance of counsel because of these conflicts would have little basis.

Public perception may be offended by this representation. The courts are concerned that the perception of the public not be adverse lest the legal system lose public trust. Our system of law depends upon the public, and other governmental agencies, following judicial judgments by force of habit and out of respect. The courts themselves have no direct power of enforcement: they can do nothing without the aid of the executive and legislative branches, and public goodwill.

Public perception, however, may not control reality and the law. In this case, the fundamental deciding factor is defendant's Sixth Amendment right to have counsel of his own choosing. Given that right, the motion to disqualify is denied.

SO ORDERED.

Jack B. Weinstein

Dated: February 14, 2006
      Brooklyn, New York